**TINLEE ENTERPRISES, INC., Plaintiff,**

v.

**AETNA CASUALTY & SURETY COMPANY, Defendant.**

No. CV 92–4714 (ADS).

United States District Court,
E.D. New York.

Oct. 13, 1993.

Hopkins, Kopilow & Hopkins, Garden City, NY (Stanley R. Kopilow, Michael Hopkins, of counsel), for plaintiff.

Feldman & Rudy, Westbury, NY (Michael Troisi, of counsel), for defendant.

## DECISION AND ORDER

SPATT, District Judge.

In this action to recover under the terms of a commercial insurance policy, the defendant moves to dismiss those portions of the plaintiff's Amended Complaint brought pursuant to New York General Business Law § 349 as well as those seeking punitive damages.

## I. *FACTUAL BACKGROUND*

The plaintiff Tinlee Enterprises, Inc. ("Tinlee") is a New York corporation which owned and operated a business known as Eddie's Enterprises Market ("Eddie's") in Woodmere, New York. The defendant Aetna Casualty & Surety Company ("Aetna") insured Eddie's under several policies against various events to its business and property, including among other things, fire, theft and business interruption. This case was brought in the Federal District Court on the basis of diversity jurisdiction.

This case concerns two incidents involving loss to Eddie's. First, the plaintiff claims a loss from the theft of property valued at $64,766.15 which occurred on November 7, 1990. Second, on November 20, 1990, a fire occurred at the same location, allegedly resulting in $660,000 in damages. As a result of the fire, the plaintiff asserts that it sustained $120,000 damages in lost business. These two occurrences were "events" covered by the Aetna insurance policies at issue. The plaintiff is suing for payment of these damages pursuant to the insurance agreement, as well as for interest running from the respective dates of loss.

The defendant Aetna has accepted coverage liability for the November 7, 1990 theft, but the parties have been unable to reach a mutually acceptable settlement figure as to the damages arising from that occurrence. Aetna has disclaimed coverage liability for the damages and alleged lost business earnings resulting from the fire. It is the defendant's contention that the fire was willfully set by the plaintiff or the plaintiff's agents. According to Aetna, the deliberate setting of the fire and subsequent submission of documents which contain false and fraudulent statements would trigger the "concealment, fraud" exclusion of the insurance agreement. Aetna also disclaims liability on the ground that if the plaintiff caused the fire, that behavior would trigger an insurance policy exclusion suspending coverage "while the hazard is increased by any means within the control or knowledge of the insured." The plaintiff denies any responsibility for the fire.

Four causes of action are set forth in the Amended Complaint. Three of the claims are asserted on the theory of breach of contract involving coverage for the burglary, fire, and resulting business losses. In the fourth cause of action, which is the subject of the instant motion, the plaintiff claims that the defendant's actions on this claim and "other similar claims" constitute deceptive business acts and practices as set forth in section 349 of the General Business Law of New York. Included in this claim is plaintiff's contention that Aetna has violated section 2601 of the Insurance Law, which constitutes a violation of Gen.Bus.L. § 349, and is therefore liable for punitive damages.

## II. *PROCEDURAL SETTING*

The defendant moves for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(b)(6), 12(c), and 12(h)(2), dismissing those portions of the plaintiff's Amended Complaint which seek damages pursuant to Gen.Bus.L. § 349 as well as punitive damages. Aetna claims these portions of the Amended Complaint fail to state claims upon which relief can be granted.

Counsel for the defendant claims that under both New York and federal law, the plaintiff must set forth in its complaint specific allegations of a deceptive or unfair prac-

tice, in addition to demonstrating that the conduct complained of is recurring and has ramifications for the public at large. Aetna contends that the bare allegations found in the plaintiff's Amended Complaint are insufficient as a matter of law to state a claim upon which relief can be granted and that this case is a simple contract dispute with no consequences for the public at large.

Aetna also seeks dismissal of those portions of the Amended Complaint which seek punitive damages. As support for this argument, the defendant claims that the substantial body of case law in New York uniformly rejects claims against first-party insurers for punitive damages based on an alleged failure or refusal by the insurer to pay an insurance claim. According to Aetna, under New York law, a claim for punitive damages against a first-party insurer is properly pleaded only where a plaintiff has made sufficient evidentiary allegations of ultimate facts of a fraudulent and deceitful scheme in dealing with the general public so as to imply criminal indifference to civil obligations. Aetna argues that the mere allegation that an insurer failed to pay the insured for a loss which the insured contends was covered is insufficient as a matter of law to sustain a claim for punitive damages.

The plaintiff cross-moves for costs and sanctions pursuant to Fed.R.Civ.P. 11. The attorneys for the plaintiff claim that their adversary's involvement in factually and procedurally similar cases precludes the argument in this case that Aetna's motion is warranted by existing law or a good faith modification of existing law. Further, the plaintiff contends that the defendant has made this motion solely to continue its allegedly unfair claims settlement procedures.

Based upon previous decisions by other courts against the defendant in similar situations, the plaintiff argues that the defendant could not reasonably have hoped to succeed in its present motion, and therefore Rule 11 sanctions are warranted. The plaintiff maintains that the Amended Complaint as drawn is sufficient to state a claim and to withstand a Rule 12(b) motion. Further, counsel argues that once the plaintiff has had an opportunity to conduct discovery, it will be in a

position to assert more specific allegations concerning the defendant's systemic practices and procedures designed to inhibit legitimate claims and settlement practices.

## III. *THE GOVERNING LAW*

### A. *Rule 12(b)(6) and 12(c)*

The standard applicable on a Rule 12(c) motion is the same as that on a Rule 12(b)(6) motion. On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" (*Goldman v. Belden,* 754 F.2d 1059, 1065 [2d Cir.1985] [quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 [1957]]; *see also Branum v. Clark,* 927 F.2d 698 [2d Cir.1991]). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient" (*Goldman v. Belden, supra,* at p. 1067).

In assessing the sufficiency of a pleading on a motion to dismiss, it is well settled that "all factual allegations in the complaint must be taken as true" (*La Bounty v. Adler,* 933 F.2d 121, 123 [2d Cir.1991]; *see also Branum v. Clark, supra; Procter & Gamble Co. v. Big Apple Industrial Bldgs., Inc.,* 879 F.2d 10, 14 [2d Cir.1989], *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 [1990]; *Cruz v. Robert Abbey, Inc.,* 778 F.Supp. 605, 607 [E.D.N.Y.1991]), and all reasonable inferences must be construed in favor of the plaintiff (*see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974]; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 [2d Cir.1988], *cert. denied sub nom. Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 [1989]; *see also La Bounty v. Adler, supra* ). A motion to dismiss is addressed solely to the face of the pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine

whether the complaint itself is legally sufficient" (*Goldman v. Belden, supra,* 754 F.2d at p. 1067).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8[a][2] ), and that "[a]ll pleadings shall be so construed as to do substantial justice" (Fed.R.Civ.P. 8[f] ).

### B. General Business Law § 349

Section 349 of New York's General Business Law provides in pertinent part as follows:

"(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

\*　　\*　　\*　　\*　　\*　　\*

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

### IV. DISCUSSION

Section 349(h) provides private parties with a cause of action for injuries "resulting from deceptive practices." "The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising" (*Genesco Entertainment, a Div. of Lymutt v. Koch,* 593 F.Supp. 743, 751 [S.D.N.Y.1984]; *compare Morris v. Gilbert,* 649 F.Supp. 1491 [E.D.N.Y.1986] [purchase of securities induced by misrepresentations of brokerage company salesman

was not a consumer transaction under § 349] ). The nature of the statute is evident in the remedies it provides. A prevailing party has the opportunity to receive the greater of actual damages or $50. The New York cases where plaintiffs have recovered under this section uniformly involve transactions where the amount in controversy is small (*see, e.g., Geismar v. Abraham & Strauss,* 109 Misc.2d 495, 439 N.Y.S.2d 1005 [1981] ).

General Business Law § 349 requires, as a prerequisite to liability, that the plaintiff establish injury to the public generally as distinguished from injury to the plaintiff alone (*Riordan v. Nationwide Mut. Fire Ins. Co.,* 756 F.Supp. 732, 739 [S.D.N.Y. 1990]; *Genesco Entertainment, A Div. of Lymutt v. Koch, supra,* 593 F.Supp. at 750–52). In *Genesco,* a breach of contract action involving a corporate plaintiff and a municipal defendant, Judge Weinfeld determined that the circumstances at issue clearly placed the case outside the purview of section 349. Construing the statute in light of the Federal Trade Commission Act, Judge Weinfeld noted the following:

"[t]he rental of Shea Stadium is not an ordinary or recurring consumer transaction. It is in effect a 'single shot transaction' involving complex arrangements, knowledgeable and experienced parties and large sums of money. The nature of alleged deceptive government practices with respect to such a transaction are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices" (593 F.Supp. at 752).

In dismissing the plaintiff's claim under Gen.Bus.L. § 349, Judge Weinfeld held that breach of a private contract affecting no one but the parties to the contract, whether the breach was negligent or intentional, was not an act or practice affecting the public interest and therefore did not fall within the ambit of § 349(h) of the General Business Law (*id.* at 752). Ultimately, the court held that the plaintiff was not "injured by reason of any violation" of section 349 because the alleged misrepresentations did not constitute

a deceptive practice within the meaning the Act.

■ Based upon *Genesco,* Gen.Bus.L. § 349(h) has been held to apply solely to matters affecting the public interest and involving transactions of a recurring nature. Where these elements are missing from a pleading, claims have been dismissed (*see H20 Swimwear, Ltd. v. Lomas,* 164 A.D.2d 804, 560 N.Y.S.2d 19 [1st Dept.1990]; *AZBY Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084 [S.D.N.Y.1988] ). In *Lomas,* for example, the Appellate Division, First Department found that Gen.Bus.L. § 349 does not provide a right of action by one business competitor against another, and dismissed one of the claims in the complaint based upon the absence of the two elements noted previously—a matter affecting the public interest and transactions of a recurring nature. Likewise in *AZBY Brokerage,* the court held that the plaintiffs did not assert an injury to consumers or the public interest, but rather to a class of independent insurance brokers who lost their commissions, and thereby did not plead a cognizable claim under Gen.Bus.L. § 349.

■ In light of the case law, therefore, the Court looks to the language used in pleading the fourth cause of action in this case:

"27. Plaintiff has complied with all contractual requirements pursuant to its contract of insurance with the defendant.

28. Despite Plaintiff's cooperation with defendant and plaintiff's compliance with all of its contractual obligations, defendant has failed and/or refused to pay plaintiff's claims, although duly demanded.

29. Further, defendant has deliberately delayed plaintiff's taking legal action, while promising repeatedly that progress was being made in the processing of these claims. *Upon information and belief,* these delaying measures are part of an institutional fraudulent practice by Defendant designed to improperly delay and/or avoid making payments to claimants. This practice is an attempt by Defendant to escape its legal, contractual obligations to make payments upon valid claims submit-

ted under policies of insurance issued by defendant.

30. *Upon information and belief,* defendant has taken actions of a similar nature to those herein in the handling of other similar claims.

31. Defendant's conduct in this action is indicative of its dealing with the general public, whereby defendant has engaged in a fraudulent scheme, issuing policies to compensate insureds for specific events with no intention of fulfilling its obligations, indicating defendant's morally culpable, wanton dishonesty and criminal indifference to its civil obligations.

32. Defendant's actions on this claim and other similar claims, including defendant's violations of § 2601 of the Unfair Claims Settlement Practice Act of the New York State Insurance Law, constitute deceptive business acts and practices as set forth by § 349 of the General Business Law" (emphasis supplied).

In his Affirmation in opposition to the motion to dismiss, counsel for the plaintiff refers the Court to *Riordan v. Nationwide Mutual Fire Insurance Co.,* 756 F.Supp. 732 (S.D.N.Y.1990), *aff'd in part,* question certified in part, 977 F.2d 47 (2d Cir.1992), certification withdrawn, 984 F.2d 69 (2d Cir.1993). Counsel contends that *Riordan* involved facts and circumstances similar to those now before the Court, and notes that counsel for the defendant here was also counsel for defendant Nationwide.

In *Riordan,* a case involving recovery under a homeowner's policy, Judge Kram found that the allegations set forth by the plaintiffs in a proposed Amended Complaint were sufficient to withstand a motion to dismiss under Rule 12(b). The plaintiff Tinlee here contends that its pleadings are modeled on those found in *Riordan* which were approved by that court. It adds that where a complaint alleges activities in violation of Insurance Law § 2601, that is sufficient to sustain a cause of action for damages under GBL § 349 in a first party insurance action.

A closer look at *Riordan* reveals that the allegations set forth by the plaintiffs were

more detailed and specific than those found in the Amended Complaint now before this Court. For example, the plaintiffs in *Riordan* asserted the specific time frame from filing, to demand, to denial of their claim; the presentation of countless documents to the insurer; numerous meetings between the insured's representatives and Nationwide; and specific deposition testimony relevant to the claim and Nationwide's response to it (*id.* at 736). Further, the plaintiffs in *Riordan* specifically set forth five policies and practices of Nationwide which they contended were in violation of the Insurance Law. There were also allegations that Nationwide was attempting to coerce the plaintiffs to settle for an amount far less than that to which they were entitled (*id.* at 739). The Tinlee pleadings concerning deceptive business practices fall far short of the quantity and quality of allegations asserted in *Riordan.* The Court draws particular attention to the fact that the most significant contentions made by Tinlee are alleged on the basis of "information and belief."

In light of the foregoing, the Court finds that the plaintiffs have failed to set forth sufficient allegations to sustain a cause of action under section 349 of the General Business Law. Therefore, the defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b), is granted, and the fourth cause of action is dismissed, without prejudice.

The Court grants the plaintiff leave to amend the pleadings solely with regard to this fourth cause of action. Since additional discovery has been completed, the plaintiff should be in a position to assert, if it chooses to do so, whatever factual allegations are pertinent, without making such assertions on the basis of "information and belief." In granting leave to amend, the Court draws the parties' attention to the following language from *Riordan:*

> "Nationwide's reading of plaintiffs' allegations under Section 349 is too narrow. Although plaintiffs allege that their primary and direct injury results from Nationwide's breach of its obligations under the Policy, plaintiffs expressly allege the existence of a claim settlement policy designed to deceive certain categories of policyholders;

in other words, the public at large. Plaintiffs alleged a direct causal connection between defendant's alleged illegal claim settlement practice and Nationwide's avoidance of its obligations under the Policy and therefore set forth precisely such evidentiary allegations of injury to the public at large as are required to sustain their claim under the General Business Law" (*id.* at 739).

In light of the fact that the plaintiff has been granted leave to amend the pleadings, the Court turns to the issue of punitive damages.

■ The leading case in New York on punitive damages is *Walker v. Sheldon,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961), an action involving allegations of fraud in the regular course of the defendant's publishing business. In *Walker,* the New York Court of Appeals held that a claim for punitive damages cannot be sustained in a private commercial dispute unless the pleading alleges "a gross and wanton fraud upon the public," requiring conduct far more culpable than "an isolated transaction incident to an otherwise legitimate business" (*id.* at 406, 223 N.Y.S.2d 488, 179 N.E.2d 497).

However, in the application of the *Walker* rule, there has been divided opinion in the appellate courts of New York State. New York courts have narrowly restricted punitive damages claims in first-party insurance cases (*see Riordan, supra,* at 740) but have refused to proscribe the right to seek punitive damages in such actions. In reliance upon *Walker,* the First Department has held that a claim for punitive damages in a first-party insurance action will be sustained if "the complaint contains (1) sufficient evidentiary allegations of ultimate facts (2) of a fraudulent and deceitful scheme (3) in dealing with the general public (4) as to imply a criminal indifference to civil obligations" (*Riordan,* at 740, citing among others, *Botway v. American Int'l Assurance Co. of New York,* 151 A.D.2d 288, 543 N.Y.S.2d 651 [1st Dept.1989]; *Holoness Realty Corp. v. New York Property Ins. Underwriting Ass'n,* 75 A.D.2d 569, 427 N.Y.S.2d 264 [1st Dept. 1980] ). The Third and Fourth Departments have not ruled on this issue, but have implic-

itly recognized the availability of punitive damages (*see Monroe v. Providence Washington Ins. Co.*, 126 A.D.2d 929, 511 N.Y.S.2d 449 [3d Dept.1987]; *DiBlasi v. Blue Cross of Western New York, Inc.*, 156 A.D.2d 986, 548 N.Y.S.2d 829 [4th Dept.1989] ).

However, the Appellate Division, Second Department in applying *Walker* has reached the opposite conclusion. In *Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359 (2d Dept.1989), the court relied upon its prior decisions in *Kurrus v. CNA Ins. Co.*, 115 A.D.2d 593, 496 N.Y.S.2d 255 (2d Dept. 1985) and *Mavroudis v. State Wide Ins. Co.*, 121 A.D.2d 433, 503 N.Y.S.2d 133 (2d Dept. 1986) to the effect that Insurance Law § 2601 does not authorize private actions for punitive damages under the rule in *Walker*. Specifically, the Second Department noted the following:

"[w]e conclude that ... [t]he availability of punitive damages in private lawsuits premised on unfair claim practices has been preempted by the administrative remedies available to the Superintendent of Insurance pursuant to Insurance Law § 2601" (*Roldan*, at 372–73).

The Federal District Court in the Southern District of New York adopted the position of the First, Third and Fourth Departments in deciding *Riordan*. In doing so, the court noted the following:

"... the rule enunciated by the Second Department does not now appear to reflect the prevailing New York view but, rather, an extension of existing law. This Court concludes that the Second Department's approach in *Roldan* is a normative one, espousing a rule at variance with established precedent. To adopt *Roldan* would require this Court to speculate as to what New York law may be at some indeterminate point in the future rather than apply New York law as it now stands. In refusing to accept *Roldan* as dispositive of the punitive damages issues now before it, this Court expresses no opinion as to the merit of the view adopted there" (756 F.Supp. at 742).

This Court further notes that the Second Circuit did not resolve this issue in *Riordan*. According to the papers submitted in this case, the Second Circuit certified to the New York Court of Appeals the question of whether a claim for punitive damages would lie in these circumstances. Specifically, the Second Circuit observed that "[t]he language of section 2601 does not indicate whether preemption of punitive damages was intended" (*Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 54 [2d Cir.1992] ). The case was apparently settled and the request for certification was withdrawn.

The Federal District Court in the Southern District of New York reviewed these issues again in 1991 in *Excel Electronics & Photo Corp. v. Aetna Cas. & Sur. Co.*, 1991 WL 259257 *4 (S.D.N.Y. Nov. 27, 1991). The court observed that when an insured party asserts that his insurance company has improperly handled a claim, New York courts have required that the plaintiff prove not only the improper conduct, but that the misconduct was part of a "continuing practice applied to a significant segment of the company's business" (*Excel Electronics & Photo Corp. v. Aetna Cas. & Sur. Co., supra*, 1991 WL 259257 at *5; *see Riordan, supra*, at 739; *Dano v. Royal Globe Ins. Co.*, 59 N.Y.2d 827, 829, 464 N.Y.S.2d 741, 742, 451 N.E.2d 488, 489 [1983]; *Halpin v. Prudential Ins. Co. of America*, 48 N.Y.2d 906, 908, 425 N.Y.S.2d 48, 49, 401 N.E.2d 171, 172 [1979] ). The court concluded that "the New York Court of Appeals would likely concur in the decision of the court in *Riordan* that such adequate allegations would state a claim under section 349 of the GBL" (*id.*) This Court agrees with the law as set forth by the First, Third and Fourth Departments of the New York State Appellate Division as well as the Federal District Courts in *Riordan* and *Excel Electronics*.

The court in *Excel Electronics* went on to note that even though such a claim for punitive damages might lie, the question remained whether that particular plaintiff's conclusory allegations of a pattern or practice could pass muster. Relying on *Belco Petroleum Corp. v. AIG Oil Rig, Inc.*, 164 A.D.2d 583, 565 N.Y.S.2d 776 (1st Dept.1991) as well as C.P.L.R. § 3016(b), the court determined that they could not because specific allegations of "evidentiary facts" reflecting

such a scheme had not been sufficiently pleaded (*Excel Electronics,* 1991 WL 259257 at *6).

The Court brings these latter cases to the plaintiff's attention with respect to repleading both the Gen.Bus.L. § 349 and the punitive damages claims.

In light of the foregoing, the Court declines to impose sanctions upon the defendant for filing the motion to dismiss, and therefore the cross-motion for sanctions pursuant to Rule 11 is denied.

## V. *CONCLUSION*

For the reasons set forth above, the defendant's motion to dismiss the Amended Complaint, pursuant to Fed.R.Civ.P. 12(b)(6), 12(c) and 12(h)(2) is granted, and the fourth cause of action is dismissed, without prejudice. The plaintiff is hereby given thirty (30) days to file a Second Amended Complaint, should it choose to do so, repleading the Gen.Bus.L. § 349 and punitive damages claims in light of the Court's findings.

The Court is sending copies of this Decision to both named counsel by regular mail and also to the plaintiff's business address by certified mail, return receipt requested.

The Court notes that on September 8, 1993, it issued an Order granting the application of the law firm of Hopkins, Kopilow & Hopkins to be relieved as counsel and staying this action for thirty (30) days to permit the plaintiff to obtain new counsel. That period has now expired. Therefore, if the plaintiff fails to file a Second Amended Complaint within thirty (30) days of the date of this Decision and Order, this case will proceed only on the first three claims in the amended complaint.

The plaintiff's cross-motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied.