OPINION OF THE COURT
Bernard F. McCaffrey, J.
The critical issue involved in this matter is the applicability of one of the least utilized and understood doctrines of law— the tort of intentional infliction of severe emotional distress.
At the outset, it should be noted that the intentional infliction of emotional distress is a separate independent tort to be distinguished from prima facie tort which is more of a "catchall” designed to provide a remedy where no traditional tort is available (Curiano v Suozzi, 63 NY2d 113 [1984]).
Although plaintiff in this instance has not done so, there are times when, upon alleging special damages, an alternative cause of action for prima facie tort may be pleaded (Freihofer v Hearst Corp., 65 NY2d 135 [1985]). Thus, though the prima facie tort will fail once a separate independent tort has been established it becomes meaningful in those instances when the traditional independent tort fails to provide a remedy (Curiano v Suozzi, supra; Belsky v Lowenthal, 62 AD2d 319, 323, affd, 47 NY2d 820).
While trial and intermediate appellate courts have, on occasion, sustained a cause of action for intentional infliction of emotional distress, it is particularly noteworthy that each such claim reviewed by the Court of Appeals has failed to meet the strict and rigid standard of extreme and outrageous conduct required (Howell v New York Post Co., 81 NY2d 115, 122 [Kaye, Ch. J.]).
On December 27, 1991 plaintiff underwent a vasectomy at North Shore University Hospital, Glen Cove, New York. The *620 procedure was performed by a nonparty, Roman Alyskewycz, M.D., on an out-patient basis. Plaintiff's friend, Carol Weiss, who is also defendant’s ex-wife, drove him home after the operation.
Plaintiff’s complaint alleges that on or about March 23, 1992 he learned that defendant, a staff physician at North Shore, improperly accessed his confidential hospital records and annexed them, without consent, as an exhibit to an affidavit in defendant’s own divorce action. In addition, defendant also allegedly disclosed plaintiff’s medical records by way of a July 28, 1992 subpoena.
Plaintiff contends that defendant was aware that the medical records were a product of a confidential doctor-patient relationship because they belonged to a doctor who also worked at North Shore. Plaintiff further asserts that Dr. Bruk was unequivocally conscious of the lack of consent since the records were removed from the hospital’s record department without the knowledge or consent of either Mr. Andrews or the attending physician, Dr. Alyskewycz.
Plaintiff, therefore, commenced the within action alleging two separate and distinct causes of action — a violation of his right to privacy and intentional infliction of emotional distress. Issue was joined with the service of defendant’s answer on or about April 15, 1993.
To withstand an application to dismiss due to an alleged failure to state a cause of action, the test is whether, liberally construed in a light most favorable to plaintiff, the pleading states any recognizable cause of action (Shields v School of Law of Hofstra Univ., 77 AD2d 867; Pietropaoli Trucking v Nationwide Mut. Ins. Co., 100 AD2d 680; Pomerance v Pomerance, 301 NY 254).
Unfortunately, to date, unlike most jurisdictions, New York has not adopted a common-law right to privacy (Howell v New York Post Co., supra; Freihofer v Hearst Corp., supra; Arrington v New York Times Co., 55 NY2d 433). The Legislature has restricted the right of privacy in disputes involving private citizens to cases involving the unauthorized use of a person’s name or likeness for "advertising” or "trade” (Civil Rights Law §§ 50, 51; Arrington v New York Times Co., supra, at 439-440; Young v United States Dept. of Justice, 882 F2d 633, 641-642 [2d Cir 1989]).
Moreover, plaintiff’s reliance upon Doe v Roe (93 Misc 2d 201 [Sup Ct, NY County, Stecher, J., 1977]) and CPLR 4504 *621 (a), to bootstrap an impermissible common-law cause of action to one based upon an unstated New York public policy and implied promise of confidentiality, is misplaced. That court extended liability to a third party (codefendant husband) as an equal "co-violator” of a patient’s physician-patient privilege which existed with his codefendant wife. No physician-patient privilege exists on the present set of facts either directly or indirectly. Defendant’s offensive actions may well have violated hospital policy as well as the Public Health and Education Laws but they do not allow for a private right of action for invasion of privacy. At least one court has declared there to be no common-law cause of action for the unauthorized disclosure of confidential medical information absent an articulated physician-patient confidential relationship (Matter of V. v State of New York, 150 Misc 2d 156 [Ct Cl 1991]).
Conversely, since 1978, this State has formally recognized the tort of intentional infliction of emotional distress. However, the "requirements of the rule are rigorous, and difficult to satisfy” (Prosser and Keeton, Torts § 12, at 60-61 [5th ed]).
"The tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress” (Howell v New York Post Co., supra, at 121).
"To survive a motion to dismiss [the strict requirements of this tort], plaintiff’s allegations must satisfy the [rigorous] rule set out in Restatement of Torts, Second * * * 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another’ * * * (§ 46, subd [1]). Comment d to that section notes that: 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community’ ” (Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983]).
One of the most recent cases to address this issue is Howell (supra), wherein Chief Judge Kaye comprehensively traces the historical background of the doctrine commencing with the 1896 Court of Appeals determination Mitchell v Rochester Ry. Co. (151 NY 107) declaring that the common law of New York does not recognize emotional injury as an independent basis for recovery despite physical manifestations.
*622 However, while the Restatement of Torts (1934) reinforced the position that a party could not be liable solely for emotional distress, courts were already creating a new tort of intentional infliction of mental suffering to provide a vehicle of redress in matters such as violations of privacy where the outrageous nature of the act cries out for relief (Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich L Rev 874 [1939]).
Thereafter, the Restatement of Torts § 46 (a) (1948 Supp) declared that "one who * * * intentionally causes severe emotional distress to another is liable.” However, as Chief Judge Kaye noted in Howell (supra), as a result of Dean Prosser’s recommendation, the requirement of "extreme and outrageous conduct” was added to offset the concern that it was too broadly based and would allow even trivial matters entrance to court where they otherwise do not belong.
Thus, the Restatement of Torts (Second) which has been adopted by the Court of Appeals now reads: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress” (§ 46 [1]).
Moreover, as enunciated by Chief Judge Kaye in Howell (81 NY2d 115, 121-122, supra):
"The first element — outrageous conduct — serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiffs claim of severe emotional distress is genuine (see, Prosser, Insult and Outrage, 44 Cal L Rev, at 44-45; compare, Mitchell v Rochester Ry. Co., 151 NY, at 110). In practice, courts have tended to focus on the outrageousness element, the one most susceptible to determination as a matter of law (see, Restatement [Second] of Torts § 46, comment h; Givelber, The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct [Social Decency’], 82 Colum L Rev 42, 42-43 [1982]) * * *
"Consequently, the 'requirements of the rule are rigorous, and difficult to satisfy’ (Prosser and Keeton, Torts § 12, at 60-61 [5th ed]; see also, Murphy, 58 NY2d, at 303 [describing the standard as 'strict’]). Indeed, of the intentional infliction of emotional distress claims considered by [the Court of Appeals], every one has failed because the alleged conduct was not sufficiently outrageous (see, Freihofer v Hearst Corp., 65 NY2d, at 143-144; Burlew v American Mut. Ins. Co., 63 NY2d 412, *623 417-418; Murphy, 58 NY2d, at 303; Fischer v Maloney, 43 NY2d, at 557). ' "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community” ’ (Murphy, 58 NY2d, at 303, quoting Restatement [Second] of Torts § 46, comment d)”. (Emphasis added.)
In making its determination, this court is, therefore, fully aware of the rigorous criteria set forth by the Court of Appeals in order to satisfy the four requisite elements of the tort.
A closer examination of the relevant decisions, especially with respect to the initial element, "extreme and outrageous conduct”, reveals, for example, that the Court of Appeals has held that a newspaper which published details of a divorce proceeding involving a prominent family, over the objections of the parties, clearly did not meet the requisite showing of extreme and outrageous conduct which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society (Freihofer v Hearst Corp., 65 NY2d 135, supra).
Burlew v American Mut. Ins. Co. (supra [Cooke, Ch. J.]) involved a claim by an injured worker that the workers’ compensation insurance carrier negligently and in bad faith delayed authorization for surgery. The Court held that the additional cause of action for intentional infliction of emotional distress against the insurance carrier for bad faith and statements by its agent that the worker could not expect to be supported by the insurer, could not be construed to be so extreme or outrageous as to meet the requirements of this tort.
Murphy (supra [Jones, J.]) involved an alleged wrongful, malicious and bad-faith discharge of a 30-year employee one day before his pension vested in retaliation for his disclosure of purported accounting improprieties on the part of corporate personnel. The Court held that his cause of action for intentional infliction of emotional distress was properly dismissed as the facts alleged by the plaintiff regarding his termination by the defendant fell short of the "atrocious” conduct required to sustain a cause of action. Moreover, the Court’s majority stated that plaintiff should not be able to do indirectly what he cannot do directly, there being no cause of action in this *624 State for abusive or wrongful discharge or contract liability for the termination of an "at will” employee. Judge Meyer, in his dissenting opinion, set forth an argument that the implied obligation of good faith should not be read out of employment contracts terminable at will but did not differ from the majority insofar as it dismissed the cause of action for intentional infliction of emotional distress.
In Fischer (43 NY2d 553 [Jones, J., 1978], supra) the Court of Appeals set aside the determination of the trial court as affirmed by the Appellate Division, Second Judicial Department, and stated that defendant’s motion for summary judgment for dismissal should have been granted as to the cause of action for intentional infliction of emotional distress in that the conduct of the directors in commencing a defamation action against plaintiff did not meet the rigorous standard required "[under that] emerging ground of tort liability” (at 557). The decision is significant because therein the Court of Appeals adopted the Restatement rule that "one who by extreme and outrageous conduct intentionally or recklessly causes emotional distress to another is subject to liability for such emotional distress” (Restatement [Second] of Torts § 46 [1]).
An analysis of the aforementioned Court of Appeals opinions would appear to indicate that the Court has, in effect, stated that the facts alleged fall far short of the strict standard required to plead the tort of intentional infliction of emotional distress.
Therefore, although the first element, "extreme and outrageous conduct”, was intended to filter out trivial and fictitious lawsuits, the clear inference of the Court of Appeals holdings is that its application goes well beyond that objective. Rather, in order for a claim of intentional infliction of emotional distress to survive a motion to dismiss, the underlying conduct complained of must not merely be injurious or malicious. It must reach a level that, upon being presented with the facts, the average member of the community would denounce such conduct as atrocious, utterly intolerable and beyond all possible bounds of decency. Thus, clearly, the conduct that meets this strict standard is the exception rather than the rule.
In this instance, plaintiff’s claim is grounded not only upon defendant’s affixing of his confidential medical records as an attachment to a sworn statement in defendant’s divorce action but also to the methods employed to obtain them. In other *625 words, the unauthorized acquisition of the records themselves may have been tortious.
It is uncontroverted that defendant obtained and affixed plaintiff’s confidential medical documents to court papers in his matrimonial action without consent. Defendant has not, however, submitted a sworn affidavit with his moving papers. Rather, his counsel submits an affirmation which studiously avoids any reference to the improper acquisition and use of the documents other than to assert that it was done so under a claim of complete immunity to "speak with that free and open mind which the administration of justice demands” misciting Youmans v Smith (153 NY 214).
Applying the rigorous and strict Restatement (Second) of Torts § 46 standard relating to the intentional infliction of emotional distress, this court finds that upon being presented with the underlying facts, the average member of the community would be outraged, shocked, indignant and enraged and deem defendant’s actions and conduct "to be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community”. (Restatement [Second] of Torts § 46, comment d.)
Defendant, through his attorney, attempts to justify his outrageous and reprehensible conduct by contending that there was no transgression since there was no doctor-patient relationship between he and the plaintiff.
The average person in the community could well find that the defendant’s conduct "exceeded] all bounds usually tolerated by decent society” (Prosser, Torts § 12, at 56 [4th ed]) and that he so abused his privileged position as a physician as to seriously effect plaintiff’s rights in direct violation of the spirit of the Hippocratic Oath.
The Hippocratic Oath states in part that "I will abstain [in treating patients] * * * from whatever is deleterious and mischievous * * * Whatever, in connection with my professional practice, or not in connection with it, I may see or hear in the lives of men which ought not to be spoken abroad I will not divulge, as reckoning that all such should be kept secret.”
"It is for the court to determine, in the first instance, whether the defendant’s conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has *626 been sufficiently extreme and outrageous to result in liability” (Restatement [Second] of Torts § 46, comment h).
Thus, in applying this criteria to the underlying facts as pleaded in the complaint, this court finds that the cause of action for intentional infliction of emotional distress is sufficient to state a cause of action (Halio v Lurie, 15 AD2d 62 [2d Dept 1961]; Long v Beneficial Fin. Co., 39 AD2d 11 [4th Dept 1972]; Lovcen Constr. Co. v Culbreth, 196 AD2d 445 [1st Dept 1993]).
Defendant’s application pursuant to CPLR 3211 (a) (7), to dismiss plaintiffs complaint, is therefore denied.