Robert C. MaGEE, Plaintiff,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, Defendant.

CV 95–4574 (ADS).

United States District Court, E.D. New York.

Feb. 17, 1997.

Westermann & Tryon, by Michael D. Tryon, Leslie C. Flynn, Garden City, NY, for Plaintiff.

Windels, Marx, Davies & Ives, by Thomas Mulligan, New York City, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This diversity action arises from the claims of the plaintiff, Robert C. MaGee ("MaGee" or the "plaintiff"), against the defendant, The Paul Revere Life Insurance Company ("Paul Revere" or the "defendant"), as the result of the parties' dispute as to whether the plaintiff is entitled to certain disability insurance benefits. MaGee alleges that as a result of Paul Revere's decision to deny him benefits, he is entitled to damages for breach of contract, violation of New York General Business Law § 349, anticipatory breach, breach of a waiver of premiums clause, intentional infliction of emotional distress and prima facie tort. MaGee seeks compensatory and punitive damages and a declaration that he is entitled to benefits. Presently before the Court is the defendant's motion to dismiss the General Business Law, anticipatory breach and the tort claims pursuant to Fed. R.Civ.P. 12(b)(6) and to strike the prayer for punitive damages.

### I. Background

The following facts are taken from the complaint. The plaintiff, Robert C. MaGee, is resident of Garden City, New York. The defendant, The Paul Revere Life Insurance Company is Massachusetts corporation authorized to do business in the State of New York.

From October 1, 1988 until January 13, 1992, MaGee was employed as the President and Chief Executive Officer of Lane Office Equipment, a "furniture company" in Manhattan. On November 7, 1988, the defendant issued to MaGee "Disability Income Insurance Policy, No. 0102368238" (the "policy") which provides for lifetime disability payments in the event the plaintiff suffers a "total disability in his occupation." According to the complaint, the term "total disability" is defined as an "inability to perform the important duties of his occupation as President and Chief Executive Officer of a wholesale furniture company located in New York City." The policy provides for a monthly payment of $6,250 in the event the plaintiff suffers a total disability. The policy also obligates MaGee to pay annual premiums in the amount of $4,220.64 for all periods during which he is not disabled. The plaintiff alleges that he has paid the required premiums at all relevant times.

On January 16, 1992, MaGee experienced "a major depressive episode." As a result, he was hospitalized at Mercy Medical Center until January 27, 1992. Although the complaint does not specify a starting date, MaGee apparently began receiving benefits under the terms of the policy at this time. During this period, the plaintiff was treated by Loretta Lodico, M.D for "extreme depression." After his release from the hospital, MaGee continued treatment with Dr. Stephen B. Rashkin, a psychologist, who apparently continues to treat the plaintiff "on a regular basis."

According to Dr. Rashkin's medical reports, MaGee's depression is the result of job related stress and "a severe accident where the automobile in which MaGee and his family were travelling rolled over several times." The complaint describes MaGee as suffering from "classic symptoms of depression, including hopelessness, feelings of inadequacy, agitation, dysphoria, and hypersomnia."

In October 1992, the plaintiff experienced a "second depressive episode." As a result, he was hospitalized from October 16, 1992 until November 3, 1992 at South Oaks Hospital where he was treated by Eugenio Tassy, M.D. for "depression." Dr. Tassy remains the plaintiff's treating psychiatrist.

According to the plaintiff, the defendant's unlawful conduct, which interfered with the plaintiff's treatment, began in August 1992, when

an agent of Paul Revere wrote a letter to Dr. Rashkin, MaGee's treating psychologist, with the intent to interfere in the physician [sic] patient relationship and to induce Dr. Rashkin to change his opinion. In that letter, Paul Revere intentionally, improperly and maliciously misrepresented facts concerning MaGee's claim and made disparaging remarks impugning MaGee's reputation.

In July 1994, at the request of the defendant, the plaintiff met with James L. Maher Jr., M.D., a consulting psychiatrist employed by Paul Revere. MaGee alleges, upon information and belief, that Dr. Maher subsequently contacted Jerome L. Missel, M.D., a Boston psychiatrist "to obtain additional information about MaGee in an attempt to reach a medical opinion favorable to Paul Revere." Dr. Missel's relationship to MaGee, if any, is not specified. In any event, the plaintiff alleges that in early 1995,

. . . Dr. Missel maliciously and intentionally interfered with MaGee's treatment and his relationship with his treating professionals by directly contacting MaGee's treating physicians, Drs. Tassy and Rashkin, with the intent to influence their opinions. In addition, Dr. Missel misrepresented, among other things, the substance of settlement negotiations entered into between MaGee and Paul Revere.

[ ] Dr. Missel's improper contact with Drs. Tassy and Rashkin was followed by memoranda from Dr. Missel to Drs. Tassy and Rashkin. In each case, the memorandum misrepresented the statements of MaGee's treating professionals in their prior interviews with Dr. Missel. Each memorandum attributed statements and opinions to MaGee's treating professional which were both untrue and unfavorable to MaGee.

On July 20, 1995, the plaintiff met with Robert Lloyd Goldstein, M.D., a consulting psychiatrist employed by Paul Revere who conducted an examination "lasting about 45 minutes." According to the complaint, on August 24, 1995, based on Dr. Goldstein's report, the defendant determined that no further benefits would be paid under the policy and no benefits have been paid since that date.

On November 7, 1995, the plaintiff commenced this action. On December 18, 1995, the defendant served its answer. By stipulation dated February 7, 1996, the parties consented to the filing of an amended complaint alleging the following causes of action based on the events set forth above: (1) breach of contract; (2) anticipatory breach; (3) breach of waiver of premiums clause; (4) declaratory judgment; (5) violation of New York General Business Law § 349; (6) intentional infliction of emotional distress; and (7) prima facie tort.

Paul Revere moves pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss for failure to state a claim, the causes of action for antici-

patory breach, violation of the General Business Law, intentional infliction of emotional distress and prima facie tort and to strike the plaintiff's prayer for punitive damages. The plaintiff opposes the motion arguing that he has set forth sufficient allegations to support his claims.

## II. *Discussion*

### A. *Rule 12(b)(6) standard*

A complaint is to be dismissed under Fed. R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994); *Allen v. West–Point–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *La Bounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied sub nom.*, *Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is also mindful that under the modern rules of pleading, the plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

### B. *The anticipatory breach cause of action*

■ Paul Revere moves to dismiss MaGee's claim for anticipatory breach which is based on the defendant's alleged "demonstra[tion] that it does not intend to resume payment of the disability benefits due MaGee at anytime in the future." An anticipatory breach occurs when a party disclaims the duty to perform under a contract prior to the time designated for its performance and before it has received all consideration due. *O'Shanter Resources, Inc. v. Niagara Mohawk Power Corp.*, 915 F.Supp. 560, 567 (W.D.N.Y.1996), citing, *Wester v. Casein Co. of Am.*, 206 N.Y. 506, 513–14, 100 N.E. 488 (1912). There must be a clear manifestation of intent communicated in advance of the time for performance that when the time arrives, performance will not be rendered. *Id.* (internal citations omitted).

■ In the absence of special circumstances "New York does not apply the doctrine of anticipatory breach where there is an alleged repudiation of an executory contract for the payment of money only." *Romar v. Alli*, 120 A.D.2d 420, 501 N.Y.S.2d 877, 878 (1st Dep't 1986). As the Second Department recognized in *Apostolou v. Mutual of Omaha Ins. Co.*, 72 A.D.2d 781, 421 N.Y.S.2d 600 (2d Dep't 1979):

> Even assuming that an action based upon an anticipatory breach of an accident and health insurance policy could be maintained in New York, a requisite element of such action would be a complete repudiation of the contract by the insurer (*Bell v. Mutual Benefit Health & Acc. Assn. of Omaha*, 19 Misc.2d 754, 755–56, 192 N.Y.S.2d 854, 855–56).... A repudiation sufficient to support an action by the insured for an anticipatory breach cannot be inferred solely from the failure of the insurer to pay installment benefits claimed by the insured to be owed ... when, during the period of such failure to pay, the insurer has continued to accept the insured's payment of premiums under the policy (*McCann v. John Hancock Mut. Life Ins. Co.*, 48 Misc.2d 325, 328, 264 N.Y.S.2d 728, 731).

*Apostolou*, 421 N.Y.S.2d at 601.

Applying these standards the Court finds that MaGee has failed to state a claim for anticipatory breach. This case falls squarely

within the holding of *Apostolou*. The defendant denies that the plaintiff is entitled to benefits under the policy. The plaintiff alleges however, that he continues to pay premiums. In the Court's view, these allegations, if taken as true, demonstrate a dispute as to the parties' rights under a valid contract. This is properly an action to recover damages for breach of contract, rather than an anticipatory breach. As a result, these allegations will not serve as a basis for an anticipatory breach claim, and the defendant's motion to dismiss this cause of action pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

### C. *The General Business Law § 349 cause of action*

■ The defendant further moves to dismiss the plaintiff's claim that the defendant's conduct violated New York General Business law § 349. MaGee pleads upon information and belief that "Paul Revere's refusal to pay disability benefits ... is part of a national policy to terminate unprofitable disability insurance policies by denying benefits to insureds and by pressuring insureds to relinquish their policies in exchange for wholly inadequate consideration."

■ General Business Law section 349 provides in relevant part:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.
>
> \*    \*    \*    \*    \*    \*
>
> (h) ... any person who has been injured by reason of any violation of this section may bring an action in his own name ... to recover his actual damages .....

N.Y.Gen.Bus.L. § 349.

> [The] parties claiming the benefit of th[is] section must, at the threshold, charge conduct that is consumer oriented. The conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; "[p]rivate contract disputes unique to the parties ... would not fall within the ambit of the statute."

*New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763, 770 (1995), quoting, *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). If the plaintiff satisfies this threshold requirement, a prima facie case may be established by pleading that the defendant engaged in an act or practice that is deceptive in a material way and that the plaintiff was injured as a result. *New York Univ.*, 639 N.Y.S.2d at 290, 662 N.E.2d at 770. As this Court recognized in *Tinlee Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 834 F.Supp. 605 (E.D.N.Y.1993), the injury must be to the public generally as distinguished from the plaintiff alone. *Id.* at 608, citing, *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F.Supp. 732, 739 (S.D.N.Y.1990), *aff'd in part, question certified in part*, 977 F.2d 47 (2d Cir.1992), *certified question withdrawn*, 984 F.2d 69 (2d Cir.1993). The legislative history of the statute makes clear that section 349 was intended to " 'afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds.' " *Oswego*, 85 N.Y.2d at 25, 623 N.Y.S.2d at 532, 647 N.E.2d at 744, *quoting*, Mem. of Governor Rockefeller, 1970 N.Y.Legis.Ann. at 472–73.

In the Court's view, the plaintiff's allegations are insufficient to satisfy these standards. As set forth above, MaGee alleges upon information and belief that the defendant maintains a "national policy to terminate unprofitable disability insurance policies." There are no facts alleged however, that would give rise to such an inference. At most, MaGee claims that the defendant breached its obligation to pay him insurance benefits and that on two occasions agent of Paul Revere contacted his treating health care professionals in an effort "to interfere with the physician patient relationship." These allegations are insufficient to demonstrate the existence of a "national policy." Indeed, any other conclusion would effectively permit a plaintiff to convert almost any garden variety breach of contract cause of action into a violation of section 349. Accordingly, Paul Revere's motion to dismiss the plaintiff's claim for violation of New York

General Business Law § 349 for failure to state a claim is granted.

### D. *The intentional infliction of emotional distress cause of action*

■ The defendant further moves to dismiss MaGee's claim for intentional infliction of emotional distress. According to the plaintiff, Paul Revere's conduct, denying him benefits and interfering with his medical treatment was so "outrageous" and involved such a "high degree of moral turpitude" that it is "sufficient to imply a criminal indifference to civil obligations" and give rise to a claim for intentional infliction of emotional distress. The Court disagrees.

In New York, to survive a motion to dismiss, allegations of intentional infliction of emotional distress,

> must satisfy the rule set out in Restatement of Torts, Second, which [the New York Court of Appeals] adopted in *Fischer v. Maloney*, 43 N.Y.2d 553, 577, 402 N.Y.S.2d 991, 373 N.E.2d 1215 [(1978)].... 'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'

*Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983). The New York courts have been extremely strict in applying these principles. *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985). In 1993, the New York Court of Appeals noted that under these standards, every claim for intentional infliction of emotional distress that the court reviewed failed because the conduct alleged was not sufficiently outrageous. *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993); *see also Andrews v. Bruk,* 160 Misc.2d 618, 610 N.Y.S.2d 752, 755 (Sup.Ct. Nassau Cty.1994).

Applying these rigorous standards, the Court finds that MaGee's claim for intentional infliction of emotional distress fails as a matter of law. As stated above, this case, at its core, is one for breach of contract based on a failure to pay insurance benefits with an extra twist insofar as the defendant's investigation practices are concerned. There are no allegations contained in the complaint which, if true, would constitute conduct so outrageous to give rise to a claim for intentional infliction of emotional distress. Accordingly, the defendant's motion to dismiss the intentional infliction of emotional distress cause of action for failure to state a claim is granted.

### E. *The prima facie tort cause of action*

■ The final cause of action that the defendant moves to dismiss pursuant to the Fed.R.Civ.P. 12(b)(6) is MaGee's claim for prima facie tort. Similar to his intentional infliction of emotional distress cause of action, the plaintiff alleges that "Paul Revere's conduct involved fraud, evinced a high degree of moral turpitude and demonstrated wanton dishonesty sufficient to imply a criminal indifference to civil obligations." Based on this characterization of the events described above, MaGee claims that he is entitled to compensatory and punitive damages under the prima facie tort umbrella. Again the Court disagrees.

■ The elements of prima facie tort are (1) intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts that would otherwise be lawful. *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 142–43, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349, 354–55 (1985). In order to recover for prima facie tort, the plaintiff must allege that

> malevolence is the sole motive for [the] defendant's otherwise lawful act or, ... unless [the] defendant acts from disinterested malevolence ... by which is meant that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.

*Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 333, 464 N.Y.S.2d

712, 721, 451 N.E.2d 459, 468 (1983) (internal citations omitted). Where the plaintiff merely pleads intentional and malicious action, but not that the defendant's "sole motivation" was "disinterested malevolence," the complaint will be dismissed. *Id.; see also Chen v. United States,* 854 F.2d 622, 629 (2d Cir. 1988); *Rabideau ·v. Albany Medical Ctr. Hosp.,* 195 A.D.2d 923, 600 N.Y.S.2d 825, 827 (3d Dept.1993).

Applying these standards, the Court dismisses the plaintiff's claim for prima facie tort for several reasons. First, the plaintiff fails to allege any special damages. Second, MaGee does not even claim that the conduct was otherwise lawful as he alleges that the defendant's conduct "involved fraud." Accordingly, the plaintiff has failed to state a claim for prima facie tort, and the defendant's motion to dismiss this cause of action pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

### F. *The punitive damages claim*

 In addition to moving to dismiss those causes of action discussed above, Paul Revere also seeks to have the Court strike those portions of the complaint seeking punitive damages. In New York, the courts require a plaintiff to establish four elements in order to obtain punitive damages "as an additional and exemplary remedy when the claim arises from a breach of contract:" (1) the defendant's conduct must give rise to an independent tort; (2) the tortious conduct must be of the egregious nature set forth in *Walker v. Sheldon,* 10 N.Y.2d 401, 404–05, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497, 498–99 (1961) such as fraud aimed at the public generally; (3) the egregious conduct must be directed at the plaintiff; and (4) the conduct complained of must be part of pattern directed at the public generally. *New York Univ.,* 639 N.Y.S.2d at 287, 662 N.E.2d at 767, citing, *Rocanova v. Equitable Life Assurance Soc'y,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342–43, 634 N.E.2d 940, 943–44 (1994). The standard for awarding punitive damages in first party insurance actions is a "strict one." *Rocanova,* 83 N.Y.2d at 613, 612 N.Y.S.2d at 343, 634 N.E.2d at 944.

 Applying this standard, the Court need only look to the first element set forth

in the *New York Univ.* case. Having · dismissed the plaintiff's claims for violation of the New York General Business Law, intentional infliction of emotional distress and prima facie tort, the Court finds that the claims alleged in the complaint do not give rise to an independent tort necessary to support a claim for claim for punitive damages. Further, for the sake of a complete analysis the Court notes that the allegations contained in the complaint do not satisfy the requirements of *Walker v. Sheldon, supra,* and the conduct alleged is not part of a pattern directed at the public generally. Accordingly, the defendant's motion to strike all the claims for punitive damages is granted.

### III. *Conclusion*

Having reviewed the parties' submissions, it is hereby

ORDERED, that the defendant's motion to dismiss the plaintiff's claims for anticipatory breach, violation of New York General Business Law § 349, intentional infliction of emotional distress and prima facie tort and to strike the prayer for punitive damages, is granted.

SO ORDERED.