OPINION OF THE COURT
 

 Ciparick, J.
 

 In both of these first-party insurance actions alleging unfair claim settlement practices, the issue presented is whether plaintiffs have pleaded actionable claims for punitive damages. We conclude they have not.
 

 I
 

 Rocanova
 

 In 1985, plaintiff Mark Rocanova purchased an individual disability income policy from defendant Equitable Life Assurance Society of the United States. Rocanova later increased his coverage effective November 1987. Shortly thereafter he filed a claim for payment under the policy, asserting that a month after the effective date of the increased coverage he developed a disease known as "dry eye syndrome”. In May 1988, Equitable informed Rocanova that it was rescinding his policy and the increased protection on the grounds that Rocanova was already disabled before the increased coverage became effective and that he had misrepresented his income in applying for the policy. Rocanova commenced this action. He
 
 *611
 
 seeks $250,000 in compensatory damages and $450 million in punitive damages.
 

 The complaint alleges six causes of action — (1) common-law fraud, (2) illegal evasion of insurance claims, (3) violation of Insurance Law § 2601, (4) breach of the implied covenant of good faith and fair dealing, (5) breach of fiduciary duties, and (6) intentional infliction of economic damage — and contains two types of allegations: those relating to Rocanova’s individual dispute with Equitable, and those relating to an alleged 10-year fraudulent pattern and practice of selling insurance policies to the general public with the intention of not honoring the policies as written. Rocanova’s complaint specifically refers to 124 disputes between Equitable and other policyholders in support of his assertion that Equitable systematically ignored claimholders, lied, invented artificial disputes, filed groundless lawsuits, and otherwise wrongfully and deliberately evaded claims and withheld moneys, all for the purpose of defrauding claimholders of interest on moneys withheld and extorting principal from claimholders through fear and intimidation.
 

 Equitable moved, pursuant to CPLR 3211 (a) (5) and (7) and 3016 (b), to dismiss Rocanova’s request for punitive damages and to dismiss all causes of action except the fourth. Supreme Court granted the motion to the extent of dismissing the first (common-law fraud), fifth (breach of fiduciary duty), and sixth (intentional infliction of economic damages) causes of action. Supreme Court denied Equitable’s motion to dismiss the second and third causes of action (for illegal evasion of insurance claims and violation of Insurance Law § 2601, which it deemed the same cause of action) as well as the demand for punitive damages. In dismissing the common-law fraud claim, Supreme Court concluded that "no inference of fraudulent intent can be drawn from the mere compilation of the 124 vignettes” of policyholder "difficulties” with Equitable. The court stated that the compilation, spanning approximately two decades, could nevertheless assist Rocanova in demonstrating the pattern and practice of unfair claim settlement practices required to establish a violation of Insurance Law § 2601. On the issue of punitive damages, the court relied on the Appellate Division, First Department’s decision in
 
 Belco Petroleum Corp. v AIG Oil Rig
 
 (164 AD2d 583) in holding that a violation of Insurance Law § 2601 gives rise to a private right of action for which exemplary damages are recoverable.
 

 
 *612
 
 The Appellate Division unanimously affirmed, stating that "the law in this Department allows for the recovery of punitive damages as a private cause of action under Insurance Law § 2601” (193 AD2d 569, 570, citing
 
 Belco, supra).
 

 Marsel
 

 Plaintiff Marsel Mirror & Glass Products, Inc., a corporation engaged in the business of manufacturing mirrors and glass products for sale to retailers, purchased from National Union Fire Insurance Company of Pittsburgh, Pa., an insolvency risk insurance policy which provided coverage against losses caused by the insolvency of certain of its buyers. Defendant American International Underwriters Insurance Company (AIU), the manager of an insurance fleet which includes National, underwrote the policy and otherwise acted as agent for National. Marsel alleges that it was provided with promotional material representing that, upon a covered customer’s bankruptcy, insurance payments would be made without a waiting period.
 

 In April 1990, a covered buyer, Ames Department Stores, sought bankruptcy protection under chapter 11 of the Bankruptcy Code. In May, Marsel filed with AIU and National a proof of loss in the amount of $1,780,257.44. Marsel was informed that payment would not be made until approximately two years into the bankruptcy process.
 

 In July 1990, Marsel accepted $1,500,000 in full satisfaction of its insurance claim, assigned its claim against Ames to National, agreed to cancellation of the policy before expiration of its term, and released National from all claims related to the policy and Marsel’s claim against defendants. The release and assignment entered into by National was negotiated and signed by AIU as agent for National.
 

 In February 1992, Marsel commenced this action alleging eight causes of action: (1) fraudulent representations prior to entry into the insurance contract; (2) fraudulent inducement into the release; (3) violation of defendants’ duties of good faith and fair dealing in settling the claim; and (4) economic duress. Causes of action five through eight each allege that defendants engaged in a pattern and practice of unfair claim settlement practices. Marsel seeks $304,341.71 in compensatory damages and $3,043,417 in punitive damages.
 

 Defendants moved to dismiss the complaint and to strike the request for punitive damages under CPLR 3211 and 3016 (b). Supreme Court granted defendants’ motion to the extent
 
 *613
 
 of dismissing the first, third, and fourth causes of action of the complaint and denied the motion as to the second and fifth through eighth causes of action. As to the final four causes of action for unfair settlement practices, the court cited
 
 Belco (supra)
 
 and stated that they "are recognized in the First Department as appropriate private civil claims under section 2601 of the Insurance Law.” The court also denied the request to dismiss the punitive damages claim, again relying on
 
 Belco (supra).
 

 The Appellate Division unanimously modified, dismissing the second cause of action, and otherwise affirmed. The Appellate Division stated that "a cause of action for punitive damages for violation of Insurance Law § 2601 may be maintained as a private cause of action” (194 AD2d 431, 434).
 

 II
 

 Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights
 
 (see, Garrity v Lyle Stuart, Inc.,
 
 40 NY2d 354, 358). However, where the breach of contract also involves a fraud evincing a "high degree of moral turpitude” and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations”, punitive damages are recoverable if the conduct was "aimed at the public generally”
 
 (see, Walker v Sheldon,
 
 10 NY2d 401, 404-405). Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious under the
 
 Walker
 
 standard to warrant the additional imposition of exemplary damages. Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally. Clearly, then, the standard for awarding punitive damages in first-party insurance actions is "a strict one”
 
 (see, Cohen v New York Prop. Ins. Underwriting Assn.,
 
 65 AD2d 71, 79), and this extraordinary remedy will be available "only in a limited number of instances”
 
 (see, Garrity,
 
 40 NY2d, at 358,
 
 supra).
 

 III
 

 We now consider whether Rocanova and Marsel have pleaded viable claims for punitive damages.
 

 
 *614
 
 Rocanova cannot maintain a claim for punitive damages based on his undismissed cause of action for breach of the implied covenant of good faith and fair dealing. Rocanova fails to demonstrate that he was personally aggrieved by tortious conduct arising out of his contractual relationship with Equitable. Indeed, the courts below have dismissed all of Rocanova’s tort claims. In particular, Supreme Court dismissed Rocanova’s fraud claim on the ground that a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.
 

 Supreme Court also concluded, and we agree, that no inference of fraudulent intent can be drawn in this case from the mere compilation of 124 "vignettes” of policyholder "difficulties” with Equitable. This portion of Rocanova’s complaint, an attempt to satisfy the "public wrong” requirement of punitive damages awards, possesses no legal significance absent his ability to state a claim to the effect that he was personally the victim of a cognizable tort arising out of his contractual relationship with Equitable, and to demonstrate that the wrong to him not only rose to the level of "such wanton dishonesty as to imply a criminal indifference to civil obligations”
 
 (Walker,
 
 10 NY2d, at 404-405), but was also part of a pattern of similar, publicly directed misconduct. Thus, Rocanova fails to state a claim for punitive damages based on his cause of action for breach of the implied covenant of good faith and fair dealing.
 

 Rocanova’s cause of action for violation of Insurance Law § 2601 must be dismissed. Contrary to the First Department’s holding in this case, the law of this State does not currently recognize a private cause of action under Insurance Law § 2601
 
 *
 

 (see, Kapeleris v Colonial Penn Ins. Co.,
 
 163 AD2d 918;
 
 Kurrus v CNA Ins. Co.,
 
 115 AD2d 593, 594;
 
 J & B Schoenfeld, Fur Merchants v Albany Ins. Co.,
 
 109 AD2d 370, 374;
 
 Riffat v Continental Ins. Co.,
 
 104 AD2d 301, 303;
 
 Royal Globe Ins. Co. v Chock Full O’Nuts Corp.,
 
 86 AD2d 315, 316;
 
 *615
 

 Cohen,
 
 65 AD2d, at 78-79,
 
 supra).
 
 To the extent the decisions below hold otherwise, they are not to be followed.
 

 In both of the cases before us, the Courts below misconstrued the
 
 Belco
 
 decision. The issue before the Court in
 
 Belco
 
 was whether Insurance Law § 2601 preempted the common-law right to seek punitive damages. The First Department in
 
 Belco
 
 correctly disagreed with the Second Department’s decision in
 
 Roldan v Allstate Ins. Co.
 
 (149 AD2d 20) and held that an insured’s common-law right to sue an insurer for punitive damages for morally culpable conduct directed at the general public was not preempted by the enactment of section 2601. Contrary to the statements contained in the decisions below,
 
 Belco
 
 did not hold that section 2601 constitutes an independent basis for a private right of action on behalf of insureds. Indeed, Rocanova does not even urge this possibility; instead, he grounds his right to recover punitive damages in the common law.
 

 Rocanova contends that his second cause of action for "illegal evasion of insurance claims payment” states a claim for punitive damages based on an independent common-law right of action for a pattern of publicly directed bad-faith conduct in handling insurance claims. According to Rocanova, such a pattern, if proven, is legally sufficient to support a claim for punitive damages.
 

 We conclude that this cause of action must also be dismissed. A complaint does not state a claim for compensatory or punitive damages by alleging merely that the insurer engaged in a pattern of bad-faith conduct. The complaint must first state a claim of egregious tortious conduct directed at the insured claimant. Only then does an alleged pattern of bad-faith conduct attain legal significance insofar as it demonstrates that a public wrong would be vindicated by the award of punitive damages.
 

 Walker (supra),
 
 upon which Rocanova relies, does not suggest otherwise. In
 
 Walker,
 
 this Court imposed the "public wrong” requirement as a limitation on the availability of punitive damages where a cause of action in fraud was stated; there is not the slightest indication in that decision that a pattern of misconduct aimed at the public can, without more, constitute an independent basis for a punitive damages award.
 

 Accordingly, Equitable’s motion to dismiss the second and third causes of action as well as the request for punitive damages should be granted.
 

 
 *616
 
 IV
 

 Marsel’s four remaining causes of action each allege that, as part of a larger pattern of unfair claim settlement practices, National and AIU acted in bad faith and failed to deal fairly with Marsel’s claim under the policy.
 

 We conclude that Marsel’s causes of action are barred by its negotiation and execution of a release and assignment which "release[d] the Company from all debts, claims, demands, damages, actions and causes of action of whatsoever character and consequence which in any way is related to the Policy, including, but not limited to, the Claim.”
 

 Marsel does not dispute that its unfair claims settlement causes of action are covered by the release. Marsel argues, however, that the release is ineffective because it was extracted through bad-faith settlement practices on the part of AIU and National. The allegations contained in Marsel’s remaining causes of action differ in no material respect from the allegations contained in the first four causes of action dismissed by the courts below. Thus, Marsel argues that the release is ineffective on grounds already held to be legally insufficient to support claims of fraudulent inducement in entering into the release, fraud, economic duress, and breach of contract. Marsel fails to establish any of the traditional bases for setting aside a release — duress, illegality, fraud, or mutual mistake
 
 (see, Mangini v McClurg,
 
 24 NY2d 556, 563). Inasmuch as the "language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed”
 
 (Matter of Schaefer,
 
 18 NY2d 314, 317;
 
 see also, Denburg v Parker Chapin Flattau & Klimpl,
 
 82 NY2d 375, 383 ["(s)trong policy considerations favor the enforcement of settlement agreements”]). Accordingly, the motion to dismiss the fifth through eighth causes of action of Marsel’s complaint should be granted.
 

 Finally, in light of our conclusion that the release bars Marsel’s remaining causes of action, Marsel cannot recover punitive damages since it is unable to assert an underlying cause of action upon which a demand for punitive damages can be grounded. A demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action such as fraud
 
 (see, Hubbell v Trans World Life Ins. Co.,
 
 50 NY2d 899, 901 ["absent a valid claim for compensatory damages, there could be none for punitive damages”];
 
 Lee Mfg. v Chemical Bank,
 
 186 AD2d 548, 550 ["a
 
 *617
 
 demand for punitive damages does not amount to a separate cause of action”];
 
 Goldstein v Winard,
 
 173 AD2d 201, 202-203 ["there can be no separate cause of action for punitive damages”]). Accordingly, the motion to dismiss the claim for punitive damages should be granted.
 

 In
 
 Rocanova,
 
 the order of the Appellate Division should be reversed, with costs, and Equitable’s motion to dismiss the claim for punitive damages and the second and third causes of action of plaintiff’s first amended complaint should be granted and the certified question answered in the negative.
 

 In
 
 Marsel,
 
 the order of the Appellate Division should be reversed, with costs, and defendants’ motion to dismiss the claim for punitive damages and the fifth through eighth causes of action of plaintiff’s complaint should be granted and the certified question answered in the negative.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 In
 
 Rocanova v Equitable Life Assur. Socy.:
 
 Order reversed, etc.
 

 In
 
 Marsel Mirror & Glass Prods, v American Inti. Underwriters Ins. Co.:
 
 Order reversed, etc.
 

 *
 

 Insurance Law § 2601 prohibits insurers from engaging in "unfair claim settlement practices”. The term is defined by reference to certain types of conduct, such as "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear”, that are "committed without just cause and performed with such frequency as to indicate a general business practice” (§ 2601 [a] [4]).