Wesley, J.
(dissenting). We agree with the majority’s characterization of the statutes and regulations in question in this case as a "Rube-Goldberg-like maze”, and we join in its request to the Legislature and Superintendent of Insurance to study and remedy the "thicket” of apparent contradictions and difficulties presented. Nevertheless, as best we can decipher the legislative intent and purpose of the current regulatory framework, preclusion should not be a remedy for an insurer’s failure timely to deny a no-fault claim.
The majority finds preclusion to be consistent with the purposes of the Insurance Law. Yet the statute and regulations provide claimants with specific remedies for an insurer’s untimely failure to pay a valid no-fault claim (Insurance Law § 5106 [a]; 11 NYCRR 65.15 [h], [i]). Instead of employing those remedies, the majority would adopt the remedy of preclusion that we crafted for the untimely failure to disclaim liability coverage under Insurance Law § 3420 (d) (see, Allstate Ins. Co. v Gross, 27 NY2d 263). Employing preclusion as a remedy for the untimely processing of no-fault claims renders the existing sanctions insignificant.
As the majority recognizes, "[n]o-fault reform was enacted to provide prompt uncontested, first-party insurance benefits” (majority opn, at 285, citing Montgomery v Daniels, 38 NY2d 41). To ensure promptness, the Superintendent of Insurance, in *287 accordance with section 5106 of the Insurance Law, promulgated regulations providing that a claim is overdue 30 days after the insurer receives verification of all relevant information (11 NYCRR 65.15 [g] [1] [i]), and providing for interest at 2% per month compounded (11 NYCRR 65.15 [h]), attorneys’ fees and optional arbitration (11 NYCRR 65.15 [i]) to discourage insurers from letting claims languish. Such a system makes eminent sense when dozens of claims can be filed by different care providers in the same case, as was the case here.[1] If instead we impose a sanction of preclusion, then an insurer may be precluded from raising similar defenses to later claims from other health care providers if the insurer allows one claim to become overdue.
By comparison, in the context of an automobile liability policy covered by Insurance Law § 3420 (d), either the insured or an injured party notifies the insurer of the accident, and the insurer generally has one chance to disclaim liability. We agree with the majority that preclusion is not specifically authorized by section 3420 (d). Preclusion makes sense when it is limited to one set of facts (i.e., one accident) and a limited number of parties. We have noted that both the insured and those claiming injury from the insured’s negligence have a right to know the carrier’s coverage position (Allstate Ins. Co. v Gross, 27 NY2d 263, 267-268, supra). Thus, preclusion guarantees everyone involved in a coverage question that it will be resolved in a timely and fair manner. In the liability insurance situation, where there are no other regulatory remedies to ensure a prompt disclaimer by the insurer, this Court devised the remedy of preclusion. The application of that remedy is not warranted a fortiori or otherwise in the context of the no-fault statute absent clearer guidance to that effect from the Legislature and the Superintendent of Insurance. To the contrary, in a January 18, 1989 letter, the Principal Examiner for the Insurance Department stated that it was the Department’s position that the existence of "significant penalties” for untimely denials of no-fault claims differentiated them from untimely denials under other provisions of the Insurance Law, particularly article 34.
The no-fault statute is a creature of legislative fiat. It sought to ensure timely payments of medical bills (Montgomery v Daniels, 38 NY2d 41, 51, supra). To that end, the Legislature *288 specifically included sanctions for the failure to pay timely a claim (Insurance Law § 5106 [a]).[2] Had the Legislature chosen to include preclusion within the available enforcement mechanism it provided for claimants (be they injured persons or care providers), it would have done so (see, Irving M. Etkind, M.D., P. C. v Allstate Ins. Co., 124 Misc 2d 779). The interpretive canon of expressio unius est exclusio alterius, applied by the majority in construing 11 NYCRR 65.15 (g) (5), applies with particular force in construing Insurance Law § 5106 (a); "when a statute creates a new right and specifies the remedy for the enforcement of such right, the remedy is generally exclusive” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240, at 413).
One of the purposes of the no-fault statute was to keep premiums low (Fafinski v Reliance Ins. Co., 65 NY2d 990, 992). The majority’s holding endangers that purpose, for it could result in insurers’ having to pay claims that would otherwise not be covered. A policy shift such as this should be left to the Legislature that balanced the various competing concerns in creating this system that appears to have functioned well in providing benefits to those injured in automobile accidents.
The majority contends that preclusion is necessary because the sanctions available to claimants will be ineffective in situations where the insurer is not required to pay the underlying claim. We believe that an insurer is unlikely to rely on its own internal and unannounced determination that a claim should be denied. The carrier has substantial incentives to deny or approve the claim quickly. If the claim is a valid one, it accrues substantial interest after only 30 days following its submission. If the carrier is of a mind to deny the claim and is wrong, it will face similar penalties when its error is ultimately determined through arbitration or litigation.
In any event, if an insurer persists in its failure to deny a claim, even an invalid one, the insurer remains subject to penalties by the Insurance Department. As the Principal *289 Examiner for the Insurance Department noted in his January 18, 1989 letter, the regulations provide a framework which would enable the Department to levy administrative penalties. The regulátions set forth time periods, violations of which can result in penalties under Insurance Law §§ 109 and 2601. We have held in other contexts that these Insurance Law provisions regulate the insurer’s performance of its contractual obligations but do not give rise to a private cause of action (New York Univ. v Continental Ins. Co., 87 NY2d 308, 317-318; Rocanova v Equitable Life Assur. Socy., 83 NY2d 603, 614). No one has suggested that the majority’s preclusion remedy must be employed because of an established failure of the Superintendent to enforce the regulations through these sections, or that these sections are ineffective in ensuring compliance by insurance carriers.
Moreover, as set forth today in Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195), the majority would preclude the insurer from raising any defense except lack of coverage. Such an approach is inconsistent with 11 NYCRR 65.15 (g) (5), which deals with lack of coverage and other defenses, or the statutory exclusions under Insurance Law § 5103 (b). In particular, Insurance Law § 5103 (b) (2) allows insurers to exclude from coverage a person injured "as a result of operating a motor vehicle while in an intoxicated condition” under Vehicle and Traffic Law § 1192. We have recognized that this statute reflects the legislative purposes of denying coverage for losses resulting from violations of the law and of keeping premiums low (Fafinski v Reliance Ins. Co., 65 NY2d 990, 992, supra). The result today contravenes those legislative purposes, by creating coverage for an accident that appears to be alcohol related solely because of an insurer’s lack of promptness. We see no need to go to such lengths when the statutes and regulations already provide sanctions for insurers that fail to act promptly.
The majority’s view, and that of the Appellate Division, is premised on the "narrow basis” that the defendant failed to disclaim within 30 days after receiving the claim and further failed to request additional verification of the claim on prescribed forms. We agree with the majority’s analysis of the applicable (and difficult) regulations involved. The carrier must pay or deny the claim within 30 days after proof of claim is received (11 NYCRR 65.15 [g] [3]). However, if a carrier has reason to believe that a claimant was operating a motor vehicle while in an intoxicated condition and that condition was a contributing cause of the accident, "the insurer shall be *290 entitled to all available information relating to the applicant’s condition at the time of the accident” (11 NYCRR 65.15 [g] [7]). The proof of claim (the document that triggers the 30-day rule set forth in section 65.15 [g] [3]) is not complete until information that has been requested pursuant to paragraph, (d) (1) or (2) of the subdivision has been furnished by the applicant or the authorized representative (plaintiff). Once the carrier determines that benefits are not payable because of the claimant’s intoxication, it must notify the applicant within 10 business days (11 NYCRR 65.15 [g] [5]). As noted by the majority, a failure to meet this deadline (which is not measured for the receipt of a completed proof of claim) does not prevent invocation of the defense in an action (11 NYCRR 65.15 [g] [5]).
The majority points out that once the insurer had reason to believe that the insured’s intoxication was a contributing cause to the accident, it had "to submit the prescribed verification forms to the appropriate parties [Presbyterian and Ms. DeGuisto] within 10 days after receipt of Presbyterian’s completed application” (majority opn, at 280). Maryland’s failure to utilize this procedure serves as the basis for the majority’s preclusion decision since, according to the majority, Maryland can only extend the 30-day period (i.e., the proof of claim is not complete) through the use of the forms for more information.
The forms Maryland can use to seek verification are "prescribed” as noted by the majority. However, the forms do not include any questions that would provide information about whether Ms. DeGuisto was intoxicated on December 26, 1993 when she drove her vehicle into a utility pole (see, Appendix 13-A, 11 NYCRR 65.15, Forms N-F2, N-F4). Presbyterian rendered medical care to Ms. DeGuisto long after the accident. Maryland filed interrogatories in this action on October 13, 1994 and asked Presbyterian to provide any information it possessed concerning Ms. DeGuisto’s blood-alcohol levels on the night of the accident. Presbyterian was unable to provide any information on this central and defining issue. Maryland thus was deprived of the benefit of a regulation that guarantees that it can delay its determination in this case until it has "all available information relating to the applicant’s condition at the time of the accident” (11 NYCRR 65.15 [g] [7]).
As the majority points out, after Maryland reviewed the accident report and learned that Ms. DeGuisto had alcohol on her breath at the accident scene and that a blood-alcohol test was performed, Maryland requested the information from the *291 local police department on April 19, 1994 long before Presbyterian filed its claim. In late June 1994, Maryland’s investigator again attempted to obtain the information. Apparently the accident was still under investigation by the District Attorney’s office with regard to another person who may have provided alcohol to Ms. DeGuisto, who was underage at the time of the accident. Because the matter was still pending, the District Attorney refused to release the blood test results. Finally, the test results were released to Maryland’s investigator (Ms. DeGuisto had a blood-alcohol level of 0.13% alcohol by weight) and Maryland notified Presbyterian the day after it received the information.
Maryland pursued the information it had to have from the only source that had it. Under the majority’s analysis, however, Maryland is precluded from using this defense because it failed to use forms that don’t allow Maryland to make the appropriate inquiries of a hospital that did not have the information. It is hard for us to understand how preclusion serves the goals of speedy payment when the statutory and regulatory framework on which it is now engrafted by this Court is fraught with ambiguities and inconsistencies.
Accordingly, we would reverse and deny plaintiffs motion for summary judgment.
Chief Judge Kaye and Judges Smith and Ciparick concur with Judge Bellacosa; Judge Wesley dissents and votes to reverse in a separate opinion in which Judges Titone and Levine concur.
Order affirmed, with costs.

. From the time of the accident to late October 1994, the carrier had received 30 different claims for care rendered to Ms. DeGuisto.

. Of the 24 no-fault statutes in effect by 1977, 18 (including New York) required payment of claims within 30 days, and made insurers liable for interest and/or attorneys’ fees on overdue payments; two other States had different time periods; one had no set time period, and three had no specific payments-due provision (Note, No-Fault Automobile Insurance: An Evaluative Survey, 30 Rutgers L Rev 909, 949, n 242). Three years after that statute was enacted in New York, there was an increase in the promptness of payment of benefits, from an average wait of 16 months prior to no-fault in New York, to an average wait of three months (id., at 952). It appears that the scheme devised by New York and other States is an effective one, without the need for an additional remedy of preclusion.