OPINION OF THE COURT
Barry A. Cozier, J.
Defendant International Fidelity Insurance Company (IFIC) moves, pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action.
FACTUAL ALLEGATIONS
Plaintiff Belinda G. McKinnon brings this class action on behalf of herself and all others similarly situated, against IFIC and two of its agents, Montgomery Carlin and David Morgan, alleging that defendants charged McKinnon excessive and unlawful fees on bail bonds. McKinnon alleges that the defendants routinely charge and receive fees of at least 10 to *519 15% of the total bail amount despite the limits set forth in the Insurance Law. She further alleges that defendants improperly designate these fees as “expenses” so as to circumvent the limitations placed on premiums by the Insurance Law. McKinnon alleges a violation of Insurance Law § 6804 (first cause of action), fraud (second cause of action), violation of General Business Law § 349 (third cause of action) and unjust enrichment (fourth cause of action).
McKinnon alleges that in June 1997, her son, Terrence Outlaw, was arrested and charged in Kings County Supreme Court with robbery. Bail was set in the amount of $50,000. To secure her son’s release on bail, McKinnon went to the offices of defendants Carlin and Morgan, located at 305 Broadway, Suite 1105, New York, New York. McKinnon was told that the $50,000 bail bond would cost $5,000 and that the sum had to be paid by certified check. McKinnon was also told that she would have to surrender the deed for her home as collateral for the bond.
Shortly thereafter, McKinnon hand delivered a certified check and the deed to her home to the offices of defendants Carlin and Morgan. By way of receipt, McKinnon received a form, dated July 15, 1997, which indicated that the bail bond premium was $1,500 and the “expenses” were $3,200. In addition, McKinnon was required to pay a $300 “transcript delivery fee” to a courier company.
McKinnon also alleges that in a separate incident, in March 1995, her husband, Charles McKinnon, was arrested and charged in Bronx County Supreme Court with second degree murder. His bail was set at $100,000. To secure her husband’s release on bail, McKinnon contacted Richard Miller of Somerset, New Jersey. McKinnon alleges that Miller was paid $12,000 for the bond by a legal defense fund set up at her husband’s place of employment. She further alleges that Miller secured the bond from one Patrick J. Ricci, an attorney-in-fact of defendant IFIC. McKinnon does not include a receipt for the premium and/or expenses paid for that bond.
DISCUSSION
Insurance Law § 6804 (a), as amended in 1997, provides as follows: “(a) The premium or compensation for giving bail bond or depositing money or property * * * shall not exceed ten per centum of the amount of such bond or deposit in cases where such bonds or deposits do not exceed the sum of three thousand dollars. Where such bonds or deposits exceed the sum of three *520 thousand dollars, the premium shall not exceed ten per cen-tum of the first three thousand dollars and eight per centum of the excess amount over three thousand dollars up to ten thousand dollars and six per centum of the excess amount over ten thousand dollars. In cases where the amount of the bond or deposit is less than two hundred dollars a minimum premium of ten dollars may be charged.” Section 6804 (b) (1) further provides that no person or corporation shall “charge or receive, directly or indirectly, any greater compensation for making a deposit for bail or giving bail.” Prior to the 1997 amendment, section 6804 provided that the premium on a bail bond could not exceed 5% up to $1,000, 4% of the excess amount over $1,000 and up to $2,000 and 3% of the excess amount over $2,000.
In support of its motion to dismiss, IFIC contends that the charges for services performed by the bail bondsmen are authorized by section 2119 (a) of the Insurance Law. Insurance Law § 2119 (a) provides in relevant part, as follows: “(a)(1) No person licensed as an insurance agent, broker or consultant may receive any fee, commission or thing of value for examining, appraising, reviewing or evaluating any insurance policy, bond, annuity or pension or profit-sharing contract, plan or program or for making recommendations or giving advice with regard to any of the above, unless such compensation is based upon a written memorandum signed by the party to be charged and specifying or clearly defining the amount or extent of such compensation.” IFIC contends that on its face, section 2119 (a) expressly allows charges by an agent for service fees in addition to the statutory maximum rates for premiums. Further, IFIC also argues that there is no private right of action under section 6804.
Insurance Law § 2119 is clearly intended to regulate fees other than commissions that insurance agents and brokers may charge insureds. However, to interpret the section as allowing additional compensation for bail bonds would render Insurance Law § 6804 a nullity. Section 6804 (a) and (b) (1) clearly provide that the “premium or compensation” may not “directly or indirectly” be greater than the maximum premium permitted by the statute. Moreover, section 2119 applies to licensed insurance agents, brokers or consultants receiving fees or commissions for designated services, and does not include bail bondsmen within its ambit.
Moreover, article 68 of the Insurance Law does not expressly provide for a private right of action. Typically, courts do not *521 construe the Insurance Law as providing for a private right of action, in the absence of express language authorizing such enforcement. (See, e.g., Rocanova v Equitable Life Assur. Socy., 83 NY2d 603 [1994] [no private right of action under Insurance Law § 2601]; Kurrus v CNA Ins. Co., 115 AD2d 593 [2d Dept 1985].) Whether a statute gives rise to a private right of action for civil damages involves a tripartite test: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purposes; and (3) whether creation of such a right would be consistent with the legislative scheme. (Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989], citing Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 329-331 [1983].)
Assuming that the plaintiff’s allegations satisfy the first two prongs of the test, the most critical inquiry is whether such action would be consistent with the over-all legislative scheme. (Hoxie’s Painting Co. v Cato-Meridian Cent. School Dist., 76 NY2d 207 [1990].) The Appellate Division, First Department, has held that a private right of action should not be judicially sanctioned where it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme. (Izzo v Manhattan Med. Group, 164 AD2d 13 [1st Dept 1990], lv dismissed 77 NY2d 989 [1991].) The Legislature has provided express administrative remedies in Insurance Law article 68 by vesting regulatory and enforcement authority with the Superintendent of Insurance. (See, e.g., Insurance Law §§ 6802 [Superintendent’s licensing authority], 6803 [Superintendent’s certificate of license].) Thus, enforcement is more appropriate within the province and jurisdiction of the State Superintendent of Insurance. (Kurrus v CNA Ins. Co., supra.) Consequently, recognition of a private right of action would undermine the legislative scheme.
Inasmuch as the court finds that bail bondsmen are not within the purview of Insurance Law § 2119, defendant’s argument that compliance with said section precludes a finding of scienter to support plaintiffs causes of action for fraud, unjust enrichment, or violation of General Business Law § 349, as a matter of law, is without merit. The court finds that plaintiffs causes of action for fraud, unjust enrichment, and violation of General Business Law § 349 as pleaded herein are sufficient based upon its review of the instant complaint.
In order to establish a General Business Law § 349 violation, the conduct must be consumer-oriented and have a broad *522 impact on consumers at large. (Bauer v Mellon Mtge. Co., 178 Misc 2d 234, 239 [Sup Ct, NY County 1998].) Moreover, “a prima facie case also requires * * * that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof.” (Supra, at 239.) To recover in an action for fraud, a plaintiff must establish: (1) a misrepresentation or a material omission of fact; (2) which was false and known to be false by defendant; (3) made for the purpose of inducing the other party to rely upon it; (4) justifiable reliance by the other party on the misrepresentation or material omission; and (5) injury. (Lama Holding Co. v Smith Barney, 88 NY2d 413, 421 [1996].)
In the instant case, plaintiff has alleged that she relied to her detriment on the false representations made by the defendant as to the amounts defendant was authorized to charge for bail premiums, which exceeded the statutory maximum, and that defendant falsely represented expenses which had no relation to actual expenses. Plaintiff further alleges that defendant knowingly made such representations and was aware that plaintiff relied upon such representations. Therefore, plaintiffs allegations establish a prima facie case for fraud and deceptive business practices pursuant to General Business Law § 349. Inasmuch as the allegations set forth herein establish prima facie causes of actions for fraud and a violation of General Business Law § 349, plaintiffs unjust enrichment claim must stand.
Accordingly, it is ordered that defendant International Fidelity Insurance Company’s motion to dismiss the complaint is granted to the extent that plaintiffs first cause of action is dismissed; and it is further ordered that the action in all other respects continue.