(May 30, 2000)

■ STEINHARDT GROUP, INC., et al., Appellants, v CITICORP et al., Respondents. [708 NYS2d 91] —Order, Supreme Court, New York County (Charles Ramos, J.), entered December 23, 1998, which granted defendants' motion to dismiss the second, third, fourth and fifth causes of action as well as the claim for punitive damages and the first cause of action except to the extent that it alleged willful overstatement of Broker Price Opinions, unanimously modified, on the law, the first, second and third causes of action reinstated in their entirety, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered April 1, 1999, which denied plaintiffs' motion for reargument and renewal, unanimously dismissed, without costs.

In essence, plaintiffs and their subsidiaries (the plaintiffs in the companion appeal, *Bristol Oaks v Citibank* (272 AD2d 258 [decided herewith]) contracted to purchase from defendants certain low-grade assets consisting of $457 million in non-performing residential mortgage loans and parcels of residential realty repossessed through foreclosure proceedings. Anxious to remove these illiquid assets from their inventory, defendants settled on a strategy of "securitization," which involved the formation of limited partnerships that would market to third-party investors a series of non-recourse bonds secured by these assets. Plaintiffs were allegedly induced to invest $41.5 million in this program, conditioned on the understanding that the loans in question were all first mortgages, and that the real estate was free of liens, encumbrances and realty tax indebtedness. Defendants' valuation of the as-

sets was to be verified by a reputable, independent accounting firm that would assure plaintiffs in writing as to the validity and accuracy of defendants' pricing methodology. The dispute centers on the ultimate valuation of these assets.

That methodology utilized a pricing model structured from Broker Price Opinions given by licensed real estate brokers, unique to each of the properties, based upon updated appraisals to be furnished by defendants. Once the bonds were sold to the public, there would be no recourse against the limited partnerships, and the bond purchaser's only security for repayment of the bonds would be the assets whose valuation is now at issue. Plaintiffs challenge the validity of the underlying appraisals. For example, they allege that the overvaluation of these assets was based on defendants' knowing use of outdated appraisals and the serious underestimation of property repair costs.

The first two causes of action allege that defendants, knowing that plaintiffs would rely on the property values in deciding whether to invest, misrepresented their stated intention to use the latest available appraisals, and concealed the fact that in many cases "origination" appraisals were offered instead, thus inflating the appraised value of the properties by $140 million. Defendants averred, *inter alia*, that plaintiffs were estopped from making such a challenge by reason of their own sophistication and opportunity to evaluate the assets before purchase. To the extent that defendants rest on plaintiffs' lack of due diligence, this does not undermine the allegations in the complaint, and can be asserted affirmatively in defendants' answer.

A claim for fraud is barred by the existence of a specific disclaimer and failure to exercise reasonable diligence (*Danann Realty Corp. v Harris*, 5 NY2d 317). The IAS Court attributed to plaintiffs a disclaimer in the sale agreement that the buyer does not rely on any representations by the seller as to "value, marketability, condition or future performance" of the mortgage loans or properties, citing an earlier decision of the Third Circuit in *Steinhardt Group v Citicorp* (126 F3d 144). But that case never treated the question of the disclaimer, instead ruling on whether Steinhardt met the definition of a "passive investor" under Federal securities laws. Furthermore, plaintiff Steinhardt was not a party to the actual sale agreements, and thus was never directly tied to such a disclaimer. Steinhardt argues that it was induced to enter into this securitization investment not by the language of the sale agreements, but rather by terms reached months earlier, in a written agree-

ment setting forth the general parameters of the investment program, long before any assets were selected for inclusion in the portfolio. That agreement, in May 1994, included no such disclaimer.

The IAS Court held that Steinhardt was bound by the disclaimer nonetheless, because Steinhardt held pervasive control over the entities that did sign the sale agreement. We disagree. The disclaimer relied on by defendants did not meet the specificity requirements of *Danann* with regard to these plaintiffs (*cf.*, 5 NY2d, *supra*, at 320-322). Even if it had, a purchaser may not be precluded from claiming reliance on misrepresentations of facts peculiarly within the seller's knowledge, notwithstanding the execution of a specific disclaimer (*Tahini Invs. v Bobrowsky*, 99 AD2d 489, 490). At the very least, there is a question of fact as to whether the disclaimer in the sale agreements applied to the general agreement reached months earlier, or was limited to the sale agreements themselves. More specifically, there are factual issues as to whether defendants acted with superior knowledge by reason of failure to disclose key information, and whether plaintiffs reasonably relied on defendants' misrepresentations (*see, Swersky v Dreyer & Traub*, 219 AD2d 321, 327-328.) The first two causes of action should not have been dismissed.

The third cause of action alleges alternatively that the misrepresentation as to the valuation of the properties and the estimation of necessary repairs was negligent, as opposed to fraudulent. The question whether plaintiffs justifiably relied upon defendants' knowingly false representations is one for the trier of facts (*Kimmell v Schaefer*, 89 NY2d 257).

Plaintiffs' fourth and fifth causes of action, alleging breach of the letter agreement and implied obligations by Citicorp, were correctly dismissed. The parties did carry out their intention by negotiating the terms of the agreement, even if key elements of the agreement were later alleged to be misrepresented. Steinhardt, in failing to exercise its own option, under the agreement, to use a Big Six accounting firm to verify Citicorp's methodology of asset valuation by means of the pricing model, cannot now be heard to charge Citicorp with breach of contract, actual or implied.

Finally, this was a private transaction. The absence of an allegation of egregious tort directed at the public at large justified the IAS Court's dismissal of the ad damnum for punitive damages (*Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603). Concur—Sullivan, P. J., Nardelli, Wallach, Lerner and Buckley, JJ.