■ Bristol Oaks, L.P., et al., Appellants, v Citibank, N. A., et al., Respondents. [710 NYS2d 319] —Order, Supreme Court, New York County (Charles Ramos, J.), entered December 23, 1998, which granted defendants' motion to dismiss the second and third causes of action of the complaint as well as the first cause except to the extent that it sought remedies for breach of non-appraisal warranties under section 8 of the purchase agreement, unanimously modified, on the law, the first cause of action reinstated in its entirety, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered April 1, 1999, which denied plaintiffs' motion for renewal and granted their motion for reargument but adhered to the court's earlier decision, unanimously dismissed, without costs, in view of the foregoing.

Plaintiffs are the subsidiaries formed by the plaintiffs in the companion appeal (*Steinhardt Group v Citicorp*, 272 AD2d 255 [decided herewith]) for the actual purchase of the assets in question. The pricing model took into consideration the performance history of these loans and mortgaged properties (payments, property repairs, etc.), but also necessitated a determination of the value of the properties. The formula for determining the value of the assets to be purchased was left vague in the contract, allowing defendants to rely, in large measure, on the opinions of independent, licensed real estate brokers in the area. But these Broker Price Opinions (BPOs) were simply "drive-by valuations" which did not involve inspection of the interiors, and relied on unverified assumptions as to the condition of the properties. Plaintiffs had agreed to purchase some 4,000 mortgage loans and properties, many of which were identified by defendants only two days before closing. The parties thus negotiated that defendants would provide appraisals for each of the properties. The term "Appraised Value" was defined in the agreement as based on "(a) an appraisal made in connection with the origination of the related Mortgage Loan as the value of the Mortgaged Property or, if later (b) the latest appraisal relating to the Mortgaged Property by a Qualified Appraiser."* More often than not, the valuations were based on outdated "origination" appraisals of the property, even when more recent appraisals were available. This, it is alleged, skewed defendants' pricing model, resulting in a vastly inflated purchase price.

Plaintiffs argue that the use of latest appraisals was clearly essential to their understanding of the contract. Defendants

---

* At the behest of Bristol Oaks' attorney, "the latest appraisal" was substituted for the words "any appraisal" in an earlier draft.

counter that the contract did not require such a formula, and that plaintiffs could have opted to verify the pricing model before closing. Indeed, the sales agreement required defendants to repurchase any assets whose prices were based on misrepresentation. Defendants did repurchase a number of these debts (fully reimbursing many of the bondholders who had bought into plaintiffs' enterprise, although not covering plaintiffs' original capital investment, let alone any anticipated profits), but not until after plaintiffs had commenced litigation, initially in Federal court.

The first cause of action is for breach of representations, warranties and covenants in the sale agreements. The IAS Court determined, as a matter of law, that the valuation of assets did not preclude defendants' utilization of origination appraisals. This was error. The contract, drafted by defendants, was ambiguous at best. These ambiguities can only be resolved by a trier of facts. Among the questions to be resolved is why—if they felt that appraisals were irrelevant to the valuation of the assets—defendants chose, in so many instances, to reach back to origination appraisals, rather than more recent ones, as a basis for the BPOs used in their pricing model.

The first cause of action should be reinstated in its entirety. Such reinstatement obviates the necessity for the duplicative second cause of action for breach of implied obligations. Likewise, the availability of an adequate remedy at law, which includes return of the remaining assets at a prorated price, obviates the necessity of the third cause of action for rescission. Concur—Sullivan, P. J., Nardelli, Wallach, Lerner and Buckley, JJ.